UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                                    Chapter 11

WASHINGTON HEIGHTS PARKING, LLC            Case No.: 15-11687-mg

                             Debtor

-------------------------------------------------------------X


**AMENDED DISCLOSURE STATEMENT REGARDING
AMENDED PLAN OF REORGANIZATION PROPOSED BY
WASHINGTON HEIGHTS PARKING, LLC
<u>DATED SEPTEMBER 25, 2015</u>**


**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR
REJECTION OF THE PLAN. THIS DISCLOSURE STATEMENT
HAS BEEN CONDITIONALLY APPROVED BY THE BANKRUPTCY
COURT BUT FINAL APPROVAL OF THE DISCLOSURE STATEMENT
HAS NOT BEEN OBTAINED FROM THE BANKRUPTCY COURT.**


                                                        SACHS & ASSOCIATES, PLLC
                                                        20 Crescent Drive
                                                        Albertson, New York 11507
                                                        Telephone: (516) 396-0129
                                                        Fax (516) 277-1857
                                                         Gary B. Sachs, Esq.

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                                          Chapter 11

WASHINGTON HEIGHTS PARKING, LLC              Case No.: 15-11687-mg

                                    Debtor

------------------------------------------------------------X

# AMENDED DISCLOSURE STATEMENT REGARDING AMENDED PLAN OF REORGANIZATION PROPOSED BY WASHINGTON HEIGHTS PARKING, LLC DATED SEPTEMBER 25, 2015

      Pursuant to § 1125 of the Bankruptcy Code, Washington Heights Parking, LLC (referred to as "WHP", "Proponent" or "Debtor"), submits this Disclosure Statement ("Disclosure Statement") in conjunction with its Plan of Reorganization ("Plan"). Except as otherwise defined, the capitalized terms of this Disclosure Statement shall have the meanings ascribed to such terms in the Plan or the Bankruptcy Code. A Disclosure Statement is intended to provide adequate information to enable Creditors to make an informed judgment in voting to accept or reject the Plan.

      The Proponent believes that the Plan is in the best interest of the estate of the Debtor. All Claimants are urged to read the Plan. All classes of creditors are unimpaired as their claims are being paid in full with interest from the Petition Date. Thus, pursuant to § 1126(f) of the Bankruptcy Code, all classes are deemed to have accepted the Plan. Accordingly, there is no need for creditors to vote if they accept or reject the Plan.

      The Bankruptcy Court has scheduled a Hearing on Confirmation of the Plan on _____ at 10:00 a.m. before the Honorable Martin Glenn, United States Bankruptcy Judge. The Hearing will be held at the United States Bankruptcy Court, located at 1 Bowling Green, Courtroom 501, New York, New York.

      No person is authorized by the Proponent in connection with the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and any exhibits attached or incorporated by reference or referred to herein, and if given or made, such information or representation may not be relied upon as having been authorized by the Proponent. While the Proponent will furnish all Claimants such additional information as may be required by applicable law prior to Confirmation, the delivery of this Disclosure Statement will not, under any circumstances, imply that the information contained in this Disclosure Statement is correct as of any time subsequent to approval by the Bankruptcy Court.

2

Unless otherwise indicated, information contained in this Disclosure Statement has been gathered from various documents which have been provided to the Proponent.

This Disclosure Statement contains only a summary of the Plan, All Creditors, holders and other interested parties are advised and encouraged to read the entire Plan and Disclosure Statement. The summaries of the Plan and the other documents contained in this Disclosure Statement are qualified by reference to the Plan.

## I. INTRODUCTION

The Proponent submits this Disclosure Statement in connection with Confirmation of the Plan attached as Exhibit "A".

### A. PURPOSE OF DISCLOSURE STATEMENT

**THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE THE HOLDER OF CLAIMS AGAINST THE DEBTOR WITH ADEQUATE INFORMATION TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.**

By order dated _____, 2015, the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") conditionally approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical investor typical of the holders of claims or interests in this case to make a reasonably informed decision about the Plan. A Hearing on Confirmation is scheduled for _____, 2015. The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guaranty of the accuracy or completeness of the information contained in this Disclosure Statement, a determination of the fairness or merits of the Plan, or an endorsement of the Plan by the Bankruptcy Court.

You should read this Disclosure Statement in its entirety before voting on the Plan. This Disclosure Statement summarizes certain terms of the Plan, but the Plan itself will be the governing documents. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling.

### B. REPRESENTATIONS

This Disclosure Statement and its attached exhibits are the only documents authorized by the Bankruptcy Court to be used in connection with obtaining information about the Plan. You should not rely on any information relating to the Debtor, its business or the Plan, other than as set forth in this Disclosure Statement and the attached exhibits.

The contents of this Disclosure Statement should not be construed as an attempt to provide legal, business, financial or tax advice. Therefore, you should consult your own legal, business, financial and tax professionals with regard to the terms and provisions of the Plan and/or how the Plan will affect your claims or interests.

3

The information contained in this Disclosure Statement has been prepared by the Proponent in good faith, based upon information available to the Proponent. However, the information set forth in this Disclosure Statement concerning the Plan has not been subject to a verified audit. Moreover, the delivery of this Disclosure Statement does not imply that the information herein is correct as to any time subsequent to the date the Bankruptcy Court approved the adequacy of the Disclosure Statement. The Proponent has not undertaken to supplement this information after delivery of Disclosure Statement.

## II. GENERAL INFORMATION ABOUT THE CHAPTER 11 PROCESS

### A. OVERVIEW OF THE LAW

Chapter 11 is the principal reorganization chapter of the United States Bankruptcy Code. Pursuant to Chapter 11, a Debtor may attempt to reorganize its business for the benefit of itself, its creditors and other parties in interest. The commencement of a Chapter 11 case creates an estate consisting of all of the legal and equitable interests of the Debtor in property as of the date the Petition is filed. §§ 1101, 1107 and 1109 of the Bankruptcy Code provide that the Debtor may continue to operate its business and remain in possession of its property as a "Debtor-in-Possession" unless the Bankruptcy Court orders the appointment of a Trustee. In this case, the Bankruptcy Court has not appointed a Trustee and the Debtor has remained in possession of its property as Debtor-in-possession.

The filing of a Chapter 11 Petition also triggers the "automatic stay" provisions of the Bankruptcy Code. Section 362 provides that the filing of a Petition for relief under the Bankruptcy Code operates as a stay preventing the commencement or continuation of any actions or proceedings against a debtor, including any attempts to collect on Pre-Petition claims or to otherwise interfere with a debtor's property or business. In a Chapter 11 case, this automatic stay remains in full force and effect until the effective date of a confirmed Plan of Reorganization, except as otherwise ordered by the Bankruptcy Court.

### B. FUNCTION OF A PLAN OF REORGANIZATION

A Chapter 11 Plan of Reorganization sets forth and governs the treatment and rights of creditors and equity interest holders with respect to their claims against and interests in the Debtor. Section 1126(f) of the Bankruptcy Code provides that a non-impaired class of claimants is deemed to have accepted this Plan. This Disclosure Statement is being presented to the Debtor's creditors and equity interest to satisfy the requirements of the Bankruptcy Code.

## III. GENERAL DESCRIPTION OF DEBTOR AND REASONS FOR FILING

### A. GENERAL DESCRIPTION OF DEBTOR

The Debtor is a business entity which owns real property located at 4320-4334 Broadway, New York, New York. The premises consisting of two ground floor commercial tenants - Staples and a radiological facility along with a parking facility on the four upper floors. The

4

Debtor anticipates its rents from its tenants approximate $1,450,000.00 on an annual basis with expenses on its operations approximating $200,000.00 a year.

### B. REASONS FOR FILING

The consolidated first mortgage on the premises matured on May 1, 2015 with a principal balance due of $12,363,146.74 on the date the mortgage matured. Prior to the mortgage maturity, the Debtor was not able to refinance the mortgage for the principal balance and disputed charges approximating $3,000,000.00. The Secured Lender for the first time, after the mortgage matured in May 2015 asserted that because of Jose Espinal's filing of a Chapter 11 petition in November 2010 it was entitled to default interest and other charges approximating $3,000,000.00. The Debtor disputes the Secured Lender's entitlement to default interest for the period preceding the May 1, 2015 maturity default and other charges and was not able to settle the matter prior to the filing of this case. Pursuant to the Loan Documents, upon default, the Debtor's right to receive rents terminated and all rents were required to be turned over to the Secured Lender. The Debtor, to resolve the dispute regarding default interest and to preserve and maintain its premises, filed a Chapter 11 proceeding on June 26, 2015.

## IV. POST-PETITION EVENTS

### A. CREDITORS' COMMITTEE

The Office of the U.S. Trustee did not appoint a creditors' committee in the Debtor's case.

### B. RETENTION OF PROFESSIONALS

By orders of the Bankruptcy Court the Debtor retained Sachs & Associates, PLLC ("S&A") as its general counsel. Marshal S. Schiff, P.C. was retained as special counsel for all real estate issues. Berger, et al., was retained as special counsel to handle issues involving disputed claims, and to aid S&A because of the disability of its sole member. It is anticipated that all three counsels will file applications for compensation. It is anticipated the three applications will not be more than $400,000.00

### C. SALE OF PREMISES

Subsequent to the filing of its Chapter 11 case, the Debtor entered into a Contract of Sale with 185th Park, LLC (the "Buyer") to purchase the Premises for $26,300,000.00. The Buyer is an affiliate of the existing subtenant who operates the garage. The Contract of Sale is for all cash with a 5% down payment and the balance payable on the Closing. The Contract of Sale provides it is subject to approval of the Court. The Contract of Sale is attached as Exhibit A to the Debtor's Plan and its terms and conditions are incorporated into the Plan. The Buyer or its principals are not related to the Debtor or any of the Debtor's principals.

The Contract of Sale is a private sale to the Buyer as authorized by the Bankruptcy Code. The sale shall be free and clear of all liens, claims and encumbrances, with the same to attach to

5

the Sale Proceeds and to be paid in full with interest according to the Plan. The sale will be approved when the Debtor's Plan is confirmed by the Confirmation Order.

Prior to the filing the Debtor tried to sell the Premises through various brokers. The offer of $26,300,000.00 is the highest and best offer the Debtor received. The offer was obtained from the Buyer directly without any real estate commission for the sale which would approximate $1,000,000.00. The selling price of $26,300,000.00 results in the Debtor being able to pay its Creditors in full with interest, and leave an equity for its equity holder of over $8,000,000.00. Pursuant to the Loan Documents, interest accrues on the unpaid balance of the Loan in the amount of approximately $110,000.00 a month. Subsequent to the filing a number of third parties have shown an interest in purchasing the premises but they have not signed a contract for a purchase. Given that all Creditors will be paid in full with interest, in many ways, the Debtor's sole equity holder, Jose Espinal, is the primary party in interest in the sale. Mr. Espinal is wholly supportive of the sale, which is not subject to a mortgage contingency and where the Debtor and the Buyer are moving to have the sale approved as expeditiously as possible.

The sale will provide that the conveyance will be pursuant to a confirmed Reorganization Plan so that the Debtor is not responsible for paying transfer taxes as authorized by § 1146(a) of the Bankruptcy Code. Article XIII (E) of the Plan provides: Transfer Tax Exemption: The transaction for sale or premises as per Exhibit A and all orders approving the same shall provide that consistent with the Supreme Court's interpretation of Section 1146(a) of the Bankruptcy Code in <u>Florida Department of Revenue v. Piccadilly Cafeterias, Inc.</u>, 128 S.Ct. 2326 (2008), that the transfer of the Premises shall be made in furtherance of a confirmed plan or reorganization and shall be exempt from payment of all transfer and recording taxes otherwise owed to a local, state or federal government unit and shall provide that the recorder of deeds or similar official shall accept such deed and instrument for recording without requiring the payment of any filing fees, documentary stamp taxes or transfer taxes, including the New York City RPT and New York State TP 584. In addition, the Contract of Sale requires that the existing consolidated first mortgage on the Property will be assigned to the Buyer or its designee at the Closing.

Creditors are advised that while the Debtor believes the sale transaction is wholly authorized under the provisions of the Bankruptcy Code, the Contract of Sale provides that if the Bankruptcy Court requires that there be competitive bidding to sell the Premises, that the Contract of Sale will serve as the so-called stalking horse contract, with a break-up fee payable to the Buyer and minimum bid protections as is more fully described within the Contract of Sale.

The description of the Contract of Sale as set forth above is a summary of salient terms within the Contract of Sale and Creditors are urged to review Exhibit A to the Plan for the full substance and form of the Contract of Sale.

**D. SECURED CLAIMS OF SECURED LENDER, HOLDER OF FIRST MORTGAGE ON THE DEBTOR'S PREMISES**

On April 8, 2005, the Debtor entered into the Loan Documents (including the Mortgage and Note) for a Loan to the Debtor of $13,250,000.00. The Loan was secured by a first mortgage on

6

the Debtor's Premises. The Loan required monthly principal and interest payments of $76,903.05. On June 1, 2005 through April 1, 2015, contract interest on the Loan was at 5.7% per annum and the Loan Documents provided for default interest above the contract rate for an additional 5%. On May 1, 2015, the principal balance and all accrued interest became due and payable. The Loan was assigned during its term to the Secured Lender. The Loan was timely paid monthly and matured on May 1, 2015. Prior to maturity, the Debtor requested a pay off on the Loan. In April 2015 the servicer for the loan changed to CWCapital Asset Management ("CWCAM"). After the Loan matured in early May, the Debtor received correspondence from CWCAM for the first time asserting that the Loan went into default status on November 30, 2010 because the Debtor's managing member and the guarantor of the Loan, Jose Espinal filed a Chapter 11 proceeding. CWCAM provided a payoff statement for the Loan on June 3, 2015, which reflected approximately $15,400,000.00 was due which contained approximately $3,000,000.00 of default interest and other charges.

### E. AFFILIATED ANALYSIS

This Debtor has no affiliates.

## V. PLAN SUMMARY

**THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. CREDITORS ARE URGED TO READ THE PLAN IN FULL AND CONSULT WITH COUNSEL TO FULLY UNDERSTAND THE TERMS OF THE PLAN. THE PLAN REPRESENTS A LEGALLY BINDING AGREEMENT WITH THE DEBTOR. A REASONABLE JUDGMENT ON THE PLAN CANNOT BE MADE WITHOUT READING THE DISCLOSURE STATEMENT AND UNDERSTANDING THE TERMS OF THE PLAN.**

### A. GENERAL DESCRIPTION

The Debtor has developed a Chapter 11 Plan of Reorganization which the Debtor believes maximizes the distributions to its creditors and which will produce an $8,000,000 distribution for the Debtor's equity holder. Distributions under the Plan will be made at the times set forth therein and the initial distributions are anticipated to occur on or before November 30, 2015.

### B. OVERVIEW OF PLAN PROVISIONS

The purpose of the Plan is to provide 100% distributions with interest to creditors of the Debtor through the sale of the Debtor's Real Property. The following is a brief overview of selected provisions of the Plan.

**ALL HOLDERS OF CLAIMS ARE URGED TO REVIEW THE PLAN CAREFULLY.**

### C. SUMMARY OF THE DESIGNATION OF CLASSES

The Plan provides for three (3) Classes of Creditors and one class of interested holders.

1. **Class I** – Class I shall consist of the allowed secured claim of the Secured Lender, the holder of the first mortgage lien on the Debtor's Premises. In this class is the allowed secured claim of the Secured Lender.

2. **Class II** – Class II shall consist of allowed secured claim of New York City, Department of Finance for unpaid real estate taxes.

3. **Classes III** – Class III shall consist of all allowed unsecured claims against the Debtor.

4. **Class IV** – Class IV shall consist of the allowed interest of the Debtor's sole equity holder, Jose Espinal.

### D. TREATMENT OF UNCLASSIFIED CLAIMS

As provided in §1123(a)(1) of the Bankruptcy Code, Administrative Claims under 11 U.S.C.§507(a)(2) are not classified for purposes of voting or receiving distributions under a Plan. Rather, all such Claims are unclassified and receive the treatment specified within the Plan and as set forth below.

1. **ADMINISTRATIVE CLAIMS**

Administrative Claims are claims allowed under §503(b) of the Bankruptcy Code as costs or Expenses of administering the estate of the Debtor created pursuant to §541 of the Bankruptcy Code. Allowed Administrative Claims are entitled to priority treatment under §507 (a)(2) of the Bankruptcy Code. Administrative Claims include, without limitation, the costs and expenses of operating the Debtor's business after the commencement of the Case, all wages, salaries and commissions for services rendered after the commencement of the Case, and all claims for Professionals employed in this Case pursuant to §§327 or 1103 of the Bankruptcy Code.

Unless the Debtor and the holder of such Claim agree otherwise, all allowed ordinary course Administrative Claims against the Debtor will be paid in full, in cash, as and when such Claims are due and owing from funds in the operating accounts of the Debtor and/or the Sale Proceeds. All Allowed Administrative Claims will be paid in full, in cash on or as soon as practicable after the later of: (a) the Effective Date of the Plan, (b) the date that any such other Administrative Claim becomes an Allowed Administrative Claim, or (c) pursuant to the payment schedule agreed upon by the holders of such Claim, as provided in the Plan. Payment of Allowed Administrative Claims shall be made from funds of the Debtor.

The Debtor estimates that on the Confirmation Date, all counsel for the Debtor will request no more than $400,000.00 in compensation for fees and disbursements.

Sachs and Associates, PLLC, counsel for the Debtor received an initial retainer of $35,000.00 for fees and disbursements. Of that amount approximately $22,000.00 was expended prior to the filing.

## 2. UNITED STATES TRUSTEE FEES AND OTHER SUMS FOR CONFIRMATION

All unpaid fees of the United States Trustee under 28 U.S.C. §1930 through the Effective Date shall be paid on or before the Effective Date from funds of the Debtor. Any unpaid fees of the United States Trustee after the Effective Date shall be paid from funds to the Debtor as and when such fees are due and payable. Fees are due to the United States Trustee until the entry of final decree at the conclusion of the Case. At present, the records of the Debtor reflect that no sums are due.

### E. SUMMARY OF CLASSIFIED CLAIMS AND TREATMENT OF CLASSES

| CLASS | DESCRIPTION | TREATMENT |
|---|---|---|
| I | Allowed secured claim of the Secured Lender, the holder of first lien Mortgage. Estimated amount of claim $15,400,000.00 including accrued interest and default interest. Approximately $3,000,000.00 of claim is disputed<br><br>Number of claims: 1 | Allowed claim plus allowed interest and other charges paid in full as follows: (a) within five (5) business days of the Effective Date all allowed non-disputed portions of claim including the principal balance owed, contract interest, default interest and other charges; (b) all disputed portions of the claim shall be deposited into the Secured Claim Escrow Account, and such disputed portion shall be paid in full plus allowed interest within five (5) business days of any disputed portions of the claim becoming allowed by a final order. The Secured Claim Escrow Account shall be funded with the full amount of the Secured Claim Escrowed Funds upon Closing, from the Sale Proceeds, before any such Sale Proceeds are distributed to the Debtor, the Reorganized Debtor and/or Mr. Espinal. |
| II | The allowed secured claim of New York City for unpaid real estate taxes.<br>Number of claims: one, estimated amount $19,000.00 | The Class II claimant shall, on the Effective Date, be paid 100% of its allowed claim with interest at 5% or such other rate as agreed to by the Debtor or set by the Court. |
| III | The allowed unsecured claims against the Debtor. Number of claims: nine. Amount of claims: $310,000.00. Amount of disputed claims: $97,000.00 | On the Effective Date all allowed claims of the Class III claimants shall be paid in cash in full and complete satisfaction 100% of their allowed claims plus interest at the |

9

|  |  | greater of (a) 5%, (b) such interest rate agreed to by the Debtor and the claimant or such rate as fixed by the Court, (c) the amount for the reserve account shall be deposited by the Effective Date and funded by the close of business on Closing. |
|---|---|---|
| IV | Equity Holder in the Debtor | The legal and equitable interest of Jose Espinal shall not be altered or changed. |

### F. PLAN DISTRIBUTION

The Debtor will be the Plan administrator for all distributions under its Plan.

### G. FUNDS FOR CONFIRMATION

On the Effective Date, the Debtor will need no more than $16,500,000.00 for its distribution to all allowed claims, a deposit into the Reserve Account for disputed claims, and a deposit into the Secured Claim Escrow Account. The Debtor will receive over $26,000,000.00 from the sale of its Premises, which sum is over $8,000,000.00 more than the Debtor needs for confirmation. The Reserve Account and Secured Claim Escrow Account are to be funded by the close of business on the Closing and before any Sale Proceeds are distributed to the Debtor, the Reorganized Debtor and/or Mr. Espinal.

## VI. DESCRIPTION OF FINANCIAL INFORMATION RESPECTING DEBTOR

### A. EXHIBITS

Annexed to the Plan as Exhibit "A" is the contract of sale for the Premises. Annexed hereto as Exhibit "B" is an estimate as of October 1, 2015 of the Debtor's liquidating value.

### B. LIQUIDATION ANALYSIS

It is the Debtor's belief as reflected in Exhibit "B" annexed hereto that on liquidation of the Debtor, the Class III Unsecured Creditors would receive a similar distribution but the distributions of Class IV interest holders would be depleted by the cost and expense of a Chapter 7 Trustee and his professionals, additional interest to the Secured Lender and a transfer tax.

## VIII. ADMINISTRATION OF CLAIMS UNDER THE PLAN

### A. GENERAL

A Plan generally provides for the administration of certain assets for the benefit of Creditors of the Debtor. The Plan prescribes the procedure for determining which claims and interests are entitled to participate in the distribution of such assets.

### B. ALLOWANCE OF CLAIMS

The Plan provides for the treatment of holder of Allowed Claims. Unless and until a claim or interest becomes an Allowed Claim, the holder of such claim shall not be entitled to any distribution or other treatment provided by the Plan. With respect to the allowance of claims, the Plan provides as follows: "Allowed" or "Allowed Claim" means any claim against the Debtor (a) with respect to which a Proof of Claim has been timely filed with the Bankruptcy Court; or (b) which is (i) listed in the schedules of creditors that the Debtor prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007 (b), as amended up to the Confirmation Date, and (ii) not listed as disputed, contingent, or unliquidated; or (c) a late filed Claim which qualified under §726 (a)(2)(C)(i) and (ii) of the Bankruptcy Code; or (d) which is designated as an Allowed Claim in this Plan. In the case of (a), (b) and (c), a claim is an Allowed Claim only if no objection to the allowance of the claim has been raised within any applicable period for raising such objection, or the Bankruptcy Court enters a Final Order allowing the claim. As specified in the Plan, the term "Allowed Claim" shall include interest on such claim for any period and after the Petition Date, as sufficient funds from the sale will be available for payment of interest in the priority specified under §726 of the Bankruptcy Code. "Allowed Administrative Claim" means an Administrative Claim which (a) the Debtor determines should be paid as an expense of administration under §503(b) of the Bankruptcy Code; or (b) the Bankruptcy Court has entered a Final Order allowing such Administrative Claim, but only to the extend allowed under a Final Order.

### C. DEADLINES FOR FILING PROOF OF CLAIMS AND APPLICATIONS FOR ALLOWANCE OF ADMINISTRATIVE CLAIMS

Pursuant to an order of the Bankruptcy Court, the last day for Creditors other than holders of Administrative Claims to timely file Proofs of Claim was September 30, 2015. All holders of claims based upon rejection of executory contracts and unexpired leases are required to file Proofs of Claim within the later of the bar date or a date to be fixed by the Court. The Claim of any Creditor who fails to file a Proof of Claim prior to such deadlines will be disallowed.

Unless the Bankruptcy Court sets an earlier deadline, all holders of Administrative Claims, including, but not limited to, claims of Professionals and other persons requesting compensation for services rendered or reimbursement of expenses under §330 of the Bankruptcy Code or seeking compensation and reimbursements for making a substantial contribution under Subsections 503(b)(3) or (b)(5) of the Bankruptcy Code, shall file and serve on the Debtor and other parties in interest as provided in the Bankruptcy Rules and Local Rules and application for final allowance of such Administrative Claims no later than sixty (60) days after the

Confirmation Date. A separate notice of an administrative bar date shall be mailed by the Debtor to all administrative creditors affected at least 20 days prior to any bar date. Any application for an Administrative Claim not filed within the time periods set by the Bankruptcy Court shall be disallowed, unless, prior to the expiration of any applicable time period, the Bankruptcy Court extends the time period after notice and a hearing. Notwithstanding anything to the contrary expressly excluded from compliance with this section is any administrative creditor who in the ordinary course provided goods and services.

### D. OBJECTIONS TO CLAIMS

Under the Plan, the Debtor may object to the validity, nature or amount of any claim. Any pre-petition claim not scheduled as disputed, contingent or liquidated as to amount on the schedules and amendments, if any, that the Debtor filed with the Court is deemed allowed unless an interested party files an objection. Prior to confirmation of the Plan, and immediately after the confirmation of the Plan, the Debtor will examine the Proofs of Claim filed with the Bankruptcy Court and will thereafter object to those claims which are improper where a purpose would be served thereby. To the extent that a claim is a Disputed Claim, the Debtor will deposit the amount of the Claim into the Reserve Account and/or the Secured Claim Escrow Account, as applicable. Distribution to Allowed Claims will be made on the Effective Date. Upon final resolution of a Disputed Claim, distribution shall be made on the claim pursuant to the provisions of Article VII of the Plan.

### E. DISPUTED CLAIMS

Prior to making any distributions under the Plan, the Debtor will establish the Reserve Account for Disputed Claims and the Secured Claim Escrow Account. The Debtor will distribute to and maintain in the Reserve Account all property on a given distribution which is due which would otherwise be distributable to holders of Disputed Claims, assuming such Disputed Claims would be allowed in the face amount claimed. In calculating the amount of the reserve, the Debtor will use one of the following as the amount of the Disputed Claim: (a) the amount such Claimant alleges is due and owing, (b) the amount ordered by the Bankruptcy Court for purposes of establishing a reserve, or (c) the amount that the Debtor and any such Claimant may mutually agree to reserve. The property reserved for the holder of a Disputed Claim will be distributed to such holder only to the extent such Disputed Claim becomes an Allowed Claim in a Final Order as the case may be. Any earnings on Cash held, in the Reserve Account will be allocated to the account of the holder of Disputed Claims for which such Cash or property is held, and distributed to such holders based on the amount of their respective Allowed Claims. The Reserve Account shall be in an interest bearing account at Sovereign Bank. After resolution of all disputed claims, any excess amounts remaining in the Reserve Account shall be remitted to the Debtor.

The Debtor shall also deposit an amount equal to (i) the face amount of the Disputed Secured Claim; (ii) two years interest on the Disputed Secured Claim, calculated at the rate of

5% per annum; and (iii) $300,000[1] for the Secured Lender's and/or CWCAM's attorneys' fees, costs and expenses (the Secured Claim Escrowed Funds) in an escrow account (the Secured Claim Escrow Account) of Marshall S. Schiff, P.C., maintained specifically and solely for the purpose of escrowing the Secured Claim Escrowed Funds. Any earnings on Cash held, in the Secured Claim Escrow Account will be allocated to the account of the Secured Lender, and distributed to the Secured Lender based on the amount of its respective Allowed Claim. Interest on the Disputed Secured Claim shall accrue at 5% per annum. Within five business days after allowance of the Disputed Secured Claim or any portion thereof, funds from the Secured Claim Escrow Account sufficient to pay such allowed amount of the Disputed Secured Claim, including any of the Secured Lender's and/or CWCAM's attorneys' fees, costs or expenses that accrue under or in connection with (i) the Loan Documents; (ii) resolution of the Disputed Secured Claim; or (iii) applicable law, shall be remitted to CWCAM, on behalf of the Secured Lender, or its assignee or designee. To the extent any amounts remain in the Secured Claim Escrow Account after full and indefeasible payment of all allowed amounts of the Disputed Secured Claim, together with all accrued interest, attorneys' fees, costs and expenses and any other amounts owed to the Secured Lender under the Loan Documents or applicable law, such remaining funds shall be remitted to the Debtor. No remittance of an excess amount shall be made without five (5) business days' notice to CWCAM. If CWCAM provides written notice to the Debtor that it objects to the remittance of such funds to the Debtor, no such funds shall be remitted to the Debtor unless and until the Debtor obtains a final, non-appealable order allowing such remittance.

O. The fees, costs and expenses of the Secured Lender and/or CWCAM's attorneys shall be paid as follows:

1. The fees, costs and expenses that accrue in connection with the Disputed Secured Claim shall accrue interest at the rate of 5% per annum and shall be paid in full when the Disputed Secured Claim or any portion thereof becomes an Allowed Claim.
2. The fees, costs and expenses, together with applicable interest, that accrue in connection with any non-disputed portions of the Secured Lender's claim shall be paid on the Effective Date.
3. Post-petition fees and expenses shall be paid as provided herein:

    a. CWCAM shall provide the Debtor's counsel (S&A) with a written invoice or statement accompanied by supporting time records, redacted as necessary to protect the attorney-client and work product privileges, and an itemization of charges. Upon receipt of such invoices, the Debtor shall, after ten business days make payment on any undisputed portion of said invoice.

    b. On any disputed portion of an invoice, the Debtor shall serve CWCAM with a written objection which shall set forth the basis of the dispute. If the dispute cannot be settled between the Debtor and CWCAM, then in that event, CWCAM may seek a hearing before the Bankruptcy Court to resolve the

---

[1] The $300,000 allocation for the Secured Lender's and/or CWCAM's attorneys' fees, costs and expenses is not a cap or limitation on the amount of such fees, costs or expenses that may accrue and that the Debtor or the Reorganized Debtor may be liable for payment of.

13

dispute. Within ten business days of the Bankruptcy Court entering an order allowing such disputed claim, the Debtor shall make payment on such amount plus interest at the rate of 5% per annum. CWCAM may seek a hearing to resolve a dispute on an individual invoice, or may wait and seek a single hearing on multiple invoices. To the extent any disputed fees or costs are allowed by the Bankruptcy Court, CWCAM and/or the Secured Lender shall be entitled to payment of all fees, costs and expenses, including attorneys' fees, costs or expenses, incurred in connection with such resolution, subject to the same payment procedures set forth herein.

### F. UNCLAIMED DISTRIBUTION

The Plan provides that if any check paid on account of a distribution is not claimed within one year after mailing, such unclaimed distribution becomes the Debtor's property.

In the event that a check is returned by the United States Postal Service on account of an incorrect or insufficient address, the Plan requires the Debtor to use reasonable means to determine the correct address and re-mail the check. If the correct address cannot be determined or if the third mailing of a check is returned, then the Creditor will be deemed to have waived or abandoned its claim and the funds payable to such Creditor shall revert to the Debtor.

### G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

An Executory Contract is defined as a contract where both sides have performance obligations to each other. All Executory Contracts or leases shall be deemed assumed on Confirmation, unless prior to Confirmation, the Debtor files a motion identifying an Executory Contract or lease it desires to reject. The assumptions of an Executory Contract or lease shall be subject to the requirements of §365 of the Bankruptcy Code. The Debtor will file prior to Confirmation, a motion listing any Executory Contract or lease contracts it wishes to reject. The Debtor shall notify the holder of any Executory Contract or lease, by first class mail to its last known address, of the rejection of the lease or Executory Contract. Any entity who has a Claim against the Debtor by virtue of the rejection of an Executory Contract or lease pursuant to an order of the Court entered into prior to the Confirmation Date, shall file a Claim with the Clerk of the Bankruptcy Court by a date to be set by the Court following the Confirmation Date. If such claim is not so filed, it shall be forever barred from assertion against the Debtor or his property. To the extent the Claim arising from the rejection of an Executory Contract or lease is allowed, said Creditors shall have the rights of a holder of a Class III Allowed Unsecured Claim with respect thereto. The Debtor presently does not intent to reject any Executory Contract. The Debtor believes it has only three leases with its tenants and its Contract of Sale provides that the Debtor will not move to reject its leases. One of its leases is with Washington Medical Realty, LLC which contains a provision if the premises was converted to a condo it had a right of first refusal (ROFR) to purchase its unit. This tenant has informed the Debtor that if it has a ROFR, it does not intend to enforce it.

## VII. CONFIRMATION OF PLAN

### A. LEGAL EFFECTS OF THE PLAN

Except as provided in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge, and release of all.  Except as provided in the Confirmation Order, pursuant to §1141(d)(5), confirmation will not (1) discharge the Debtor from all claims or other debts that arose before the Confirmation Date and all debts of the kind specified in §§502(g), 502(h) or 502 (i) of the Bankruptcy Code, whether or not (a) a proof of claim based on such debt is filed or deemed filed pursuant to §501 of the Bankruptcy Code, (b) a claim based on such debt is allowed pursuant to §502 of the Bankruptcy Code, or (c) the holder of a claim based on such debt has accepted the Plan until all payments under the Debtor's Plan have been made.

As of the Confirmation Date, except as provided in the Plan or the Confirmation Order, all entities will be precluded from asserting against the Debtor, or his property, any other or further claims, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such claims and other debts and liabilities against the Debtor, and termination of all such equity interest and other rights of equity security holders in the Debtor, pursuant to §§ 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged claim.

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an equity interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions against the Debtor, or its property on account of any such discharged claim, debt or liability or terminated equity interest or right: (a) commencing or continuing, in any manner of in any place, any action or other proceeding, (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance, (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor, and (e) commencing or continuing any actions, in any manner or in any place, that does not comply with or is inconsistent with the provisions of the Plan.

To the extent permitted by applicable law, if the representatives, attorneys, accounts, financial advisors, and agents of the Debtor act in good faith, the Plan provides that they shall not be liable to any holder of a Claim or equity interest, or any other party with respect to any action, forbearance from action, decision or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with (a) the operation of the Debtor; (b) the proposal or implementation of any of the transactions provided for, or contemplated in, the Plan; or (c) the administration of the Plan or the distribution to be made pursuant to the Plan; other than for willful misconduct, gross negligence, or breach of a fiduciary duty.  The Plan provides

that the Debtor, its respective representatives, attorneys, accounts, financial advisors, and agents, may rely on the formal written objections of counsel; certified public accountants, and other experts or professions employed by the Debtor; and such reliance shall conclusively establish good faith.

### B. AMENDMENTS AND MODIFICATIONS OF THE PLAN

The Plan may be amended or modified in the manner prescribed in § 1127 of the Bankruptcy Code.

### CONFIRMATION AND DISCLOSURE HEARING

The Bankruptcy Code requires the Bankruptcy Court, after notice, to conduct a hearing regarding whether the Plan and the Proponents have fulfilled the confirmation requirements of § 1129 of the Bankruptcy Code. The Bankruptcy Court has entered an order setting ____ a.m. on _____, at the United States Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, New York, as the time, date and place for hearing on the final approval of the Disclosure Statement and for the Confirmation. The Confirmation Hearing, which Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment of that hearing.

### C. OBJECTIONS TO CONFIRMATION OF THE PLAN

The Bankruptcy Court has entered an order setting as the date by which all objections to confirmation of the Plan must be filed with the Bankruptcy Court and served upon Counsel for the Debtor, and the U.S. Trustee. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. Unless an objection to confirmation is timely filed and served, it may not be considered by the Bankruptcy Court.

### D. CONFIRMATION STANDARDS

The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtor, including that (a) the Plan has classified Claims and Interests in a permissible manner, (b) the Plan complies with applicable provisions of the Bankruptcy Code, (c) the Debtor as proponent has complied with applicable provisions of the Bankruptcy Code, (d) the Debtor has proposed the Plan in good faith and not by any means forbidden by law, (e) the disclosure required by § 1125 of the Bankruptcy Code has been made, (f) the Plan has been accepted by the requisite votes of Creditors (except to the extent that cram down is available under Section 1129 (b) of the Bankruptcy Code or that Creditors are not impaired by the Plan), (g) the Plan is feasible and confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, (h) the Plan is in the "best interests" of all holders of claims or Interests in an impaired class by providing to such holders on account of their Claims or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a

16

Chapter 7 liquidation, unless each holder of a Claim or Interest in such class has accepted the Plan, (i) all fees and expenses payable under 28 U.S.C. §1930, as determined by the Bankruptcy Court at the hearing on confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date, and (j) the Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in § 1114 of the Bankruptcy Code, at the level established at any time prior to confirmation pursuant to § 1114(e)(1)(B) or 1114(g) of the Bankruptcy Code, for the duration of the period that the Debtor had obligated itself to provide such benefits.

### E. CERTAIN CONFIRMATION REQUIREMENTS

At the confirmation hearing, the Bankruptcy Court will confirm the Plan only if all of the Requirements of § 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that the Plan (a) is accepted by the requisite holders of Claims and Interests of any impaired class, or if not accepted, is "fair and equitable" and "does not discriminate unfairly" as to the non-accepting impaired class or classes, and (b) is in the "best interests" of each holder of a Claim or Interest that does not vote to accept the Plan in each impaired class under the Plan. Here under §1126(f) as no class of creditor is impaired and all classes of creditors are deemed to accept the Plan.

### (1) BEST INTEREST

Notwithstanding acceptance of the Plan by Creditors and Interest holders, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all classes of Creditors and equity holders. The "best interest" test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired class of Claims and Interests a recovery which has a present value at least equal to the present value of the distribution which each such person will receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Here all classes of claimants and interest holders are not impaired and receive at least a present value of the distributions they would receive under Chapter 7.

To determine if the Plan is in the best interest of each class, the probable results of a Chapter 7 liquidation must be compared with the results proposed under the Plan. Annexed hereto as Exhibit "B" is the Debtor's pro-forma liquidation analysis estimating the distributions to Creditors and equity holders in the event this Chapter 11 case was converted to a Chapter 7 case and a Trustee was appointed? The Debtor has applied, in general, the rule of absolute priority of distributions in the Plan. Under the absolute priority rule, no junior class of creditors may receive any distribution until all senior classes of creditors are paid in full, and no holder of any equity interest may receive any distribution until all creditors are paid in full. As indicated by the liquidation analysis, the creditor's recovery under this Plan is at least what they would receive in the event of the conversion of this Chapter 11 to Chapter 7 of the Bankruptcy Code.

### (2) FEASIBILITY

Under § 1129(a)(1) of the Bankruptcy Code, the Plan Proponents must show that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

17

financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan).

On the Effective Date all allowed claims shall be paid in full with interest from the proceeds of the sale or sums sufficient to pay all disputed claims will be deposited into the reserve account.

## VIII. COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE

Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code. The Plan Proponents have considered each of these issues in the development of the Plan and believe that the Plan complies with all applicable provisions of the Bankruptcy Code. While it is possible that some party or parties may object to the Plan, it is the Plan Proponents' position that any such objection would not be well founded.

## IX. ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor has evaluated alternatives to the Plan, including the liquidation of the Debtor. After considering these alternatives, the Debtor has concluded that the Plan is in the best alternative and will maximize the recoveries to the holders of all claims and equity interest.

### A. ALTERNATIVE PLANS OF REORGANIZATION

If the Plan is not confirmed the Debtor, or any other party in interest in this Chapter 11 case, could attempt to formulate and propose a different plan of reorganization. This would only postpone confirmation and deplete the equity because of additional interest accumulating at $110,000.00 per month to pay the claim of the Secured Lender (Class I) and the additional costs by prolonging the Chapter 11 case.

### B. LIQUIDATION UNDER CHAPTER 7

If this Chapter 11 is converted to a Chapter 7 a trustee would be elected or appointed to consummate the sale and liquidate the proceeds from the sale of the Debtor's premises. The proceeds would be distributed to the respective holders of allowed claims against the Debtor in accordance with the strict priorities established under the Bankruptcy Code.

Under Chapter 7, a secured creditor whose claim is fully secured as in this proceeding would be entitled to full payment, including interest, from the proceeds of the sale of its collateral (the Real Property). Administrative Claims under the Bankruptcy Code would be paid in full before any distribution to creditors holding priority claims or unsecured claims. There are no priority claims. Funds remaining after payment of Secured Claims (Class I & II), Administrative Claims would be distributed to Unsecured Creditors (approximately $200,000.00). The balance of over $8,000,000.00 would be reduced by $1,800,000.00 for the fees and expenses of a Chapter 7 Trustee and his professional and the additional interest at

$110,000.00 a month payable to the Secured Lender, and a transfer tax approximating $800,000.00.

The Debtor has considered liquidation in the context of a Chapter 7 case and the liquidation analysis is attached to this Disclosure Statement as Exhibit "B". The liquidation analysis illustrates the recovery available to the Debtor is less than it would receive under the Debtor's Chapter 11 Plan.

Based on the foregoing, the Plan proponent believes that the holders of Allowed Claims and Equity Interest will receive more under the Plan than they would receive if the Chapter 11 case was converted to Chapter 7 cases.

## X. MISCELLANEOUS MATTERS

### A. DISCHARGE

The Debtor will not receive a discharge until all payments under the Plan are completed.

### B. RECOVERY OF PREFERENCES, FRAUDULENT CONVEYANCES AND INSIDER CLAIMS

After the review of the books and records, the Debtor's attorneys and the person signing this Disclosure Statement on behalf of the Debtor has investigated whether there are any valid causes of action, including proceedings to avoid transfers, including but not limited to, proceedings under 11 U.S.C. §544(b), 547, 548, 549, 550, or applicable state law, against insiders or other entities, and that, except as specifically set forth, none exist. The Debtor does not intend to institute any causes of action for preferences or fraudulent conveyances. The Debtor believes that the legal cost and disbursements for these types of proceedings would not be merited as the Debtor will be solvent once the sale occurs.

### C. TAX CONSEQUENCES

The Debtor has not researched the Federal Income Tax consequences of the Plan to holders of claims and interest based upon the Internal Revenue Code. The Debtor has not requested a ruling from the Internal Revenue Service ("IRS") with respect to this matter. Accordingly, no assurance can be given to the interpretation of the IRS. Further, the Federal Income Tax consequences to any particular creditor or interest holder may be affected by matters not discussed herein. Theses also may be state, local or foreign tax considerations applicable to each creditor or holder of an interest. EACH CREDITOR AND HOLDER OF AN INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN AND THE FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. The Debtor, based upon information supplied to it by its accountant does not believe that the confirmation of the Debtor's proceeding through a Plan of Reorganization which results in debt forgiveness from unsecured creditors will affect his obligations to pay federal income taxes.

## XI. CONCLUSION – SOLICITATION OF ACCEPTANCE

A ballot for acceptance or rejection of the holders of all classes of impaired claims need not be solicited herein as all classes are unimpaired, and are deemed to have accepted the Plan. Thus solicitation of their acceptances or rejections of the Plan is not required. The Debtor believes that confirmation of the Plan is in the best interest of all Claimants and its equity holders. The Debtor has worked diligently and expeditiously to formulate a Plan that would afford Creditors at least what they would receive if the case was converted to liquidation case under Chapter 7 of the Bankruptcy Code. The Debtor believes this Plan is in the best interests of its Creditors and the holder of its Equity Interest.

Dated: Albertson, New York
September 25, 2015

Washington Heights Parking, LLC

__/s/ Jose Espinal__
By: Jose Espinal
Sachs & Associates, PLLC
Attorneys for the Debtor
20 Crescent Drive
Albertson, New York 11507
516 396-0129
Gary B. Sachs (GS-4527)